**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| **ARCTIC EXPRESS, INC.,** | : | |
| | : | |
| Plaintiff-Appellee, | : | Case No. C2-06-435 |
| | : | |
| v. | : | JUDGE ALGENON L. MARBLEY |
| | : | |
| **DEL MONTE FRESH PRODUCE NA, INC.,** | : | |
| | : | |
| Defendant-Appellant. | : | |
| | : | |

## <u>OPINION & ORDER</u>

### I. <u>INTRODUCTION</u>

Pending before this Court is an appeal of a decision and judgment by the United States Bankruptcy Court for the Southern District of Ohio, dated April 18, 2006 and May 30, 2006, respectively, in a dispute between Plaintiff-Appellee Arctic Express, Inc, ("Arctic") a carrier of goods, and Defendant-Appellant Del Monte Fresh Produce NA, Inc., (Del Monte") a shipper of goods.  In its decision and judgment the Bankruptcy Court: (1) granted Arctic's Motion for Summary Judgment; (2) denied Del Monte's Motion for Summary Judgement; and (3) granted judgment against Del Monte, ordering it to pay damages, with interest, to Arctic.  For the reasons set forth below, the Bankruptcy Court's decision is **REVERSED** and **REMANDED**.

### II. <u>BACKGROUND</u>

#### A. Facts

Arctic is a motor carrier company that transports cargo for interstate shippers; Del Monte is an interstate shipper of produce.  All claims comprising the underlying action relate to interstate transportation services provided by Arctic for Del Monte during the period of October

2000 through February 2001.  Arctic claims that it was never paid for these services, and seeks to recover the amount due (the "Freight Charges").  Both parties agree that the reasonable Freight Charges for such services, under normal circumstances, totaled $169,941.68, the amount Arctic seeks in damages.

On February 28, 3003, Arctic filed a complaint in the Franklin county Court of Common Pleas for payment of the outstanding Freight Charges, asserting state-based causes of action for payment of an outstanding account, breach of contract, unjust enrichment, and conversion.  Del Monte filed an answer and counterclaim seeking compensation for damages that allegedly occurred by reason of Arctic's failure to deliver Del Monte's produce in a conforming conduction.  Although the produce was tendered to Arctic in good condition, according to Del Monte, it frequently arrived in damaged or spoiled condition, or later than the designated delivery time, and was rejected by Del Monte's customers.  Del Monte, therefore, issued refunds or credits to its customers, and seeks damages from Arctic in the amount of $173,540.12.  Del Monte originally stated state law claims for breach of contract and negligence, but later conceded that its exclusive remedy rests with the federal law set forth in the Carmack Amendment.

### B.  Procedural History

On October 31, 2003, Arctic filed voluntary petitions pursuant to Chapter 11, Title II of the United States Code in the United States Bankruptcy Court for the Southern District of Ohio, commencing the underlying bankruptcy case.  Arctic's bankruptcy stayed the state court proceeding, and by an Agreed Order entered on May 27, 2004 both parties stipulated to attempt resolution of the dispute through mediation, and to continue litigation in the Bankruptcy Court if

such effort failed. When the mediation proved unsuccessful, the parties filed pleadings with the Bankruptcy Court as they had done in the state court. Arctic filed its Complaint on July 23, 2004 and Del Monte filed its Answer and Counterclaim, which included the federal Carmack Amendment claim, on August 6, 2004.

Following the initial pleadings, on September 15, 2004, the parties entered into a Stipulation Regarding Parties' Preliminary Pre-Trial Statement ("Stipulation") in which the parties agreed to present certain legal issues to the Bankruptcy Court for resolution through cross motions for summary judgment. The pertinent portion of that document states:

> The mediation failed to resolve the case, primarily due to the parties' disagreement over certain legal issues, including the statute of limitations applicable to the claims asserted by one another. The parties now agree that it is in the best interest of the partes that these legal issues should be briefed and resolved by the Court before additional fact discovery is considered. The parties agree that the Court's ruling on these legal issues will most likely limit or eliminate the need for additional discovery or trial for this matter, and that resolving the disputed legal issues first should promote judicial economy and save time and expense for both parties.

Thereafter, the parties filed motions for summary judgement with respect to the statute of limitations issues and each party presented its argument during an oral hearing conducted before the Bankruptcy Court on February 8, 2005. On April 18, 2005, the Bankruptcy Court issued its Memorandum of Opinion and Order Ruling on Arctic's and Del Monte's Motions for Summary Judgment ("Bankruptcy Opinion"). The Bankruptcy Opinion stated that: (1) Arctic's claims for unpaid Freight Charges are premised in state law and not, therefore, affected by statute of limitations set forth in 49 U.S.C. § 14705; and (2) the Carmack Amendment (49 U.S.C. § 14706(e)), which preempts Del Monte's state law claims, barred Del Monte's damages claims because they were filed beyond the time contemplated by the statute. The Bankruptcy Court also

issued a Judgment Entry in favor of Arctic on May 30, 2006, awarding Arctic damages in the amount of $232,550.91 ($169,941.68 plus prejudgment interest).

On April 28, 2006, Del Monte appealed the Bankruptcy Opinion. On July 6, 2006 Del Monte submitted its Brief in Support of Appeal; Arctic filed its Response on August 11, 2006 and Del Monte submitted its Reply on August 28, 2006. Jurisdiction over the instant appeal is vested in this Court pursuant to 28 U.S.C. § 158(a)(1). Accordingly, the appeal is ripe for this Court's review.

### III. STANDARD OF REVIEW

Where the Bankruptcy Court acts as the trial court, the Bankruptcy Court makes initial findings of fact and conclusions of law. *Thomasville Furniture Indus., Inc. v. Elder-Beerman Stores Corp.* 250 B.R. 609, 619 (S.D. Ohio 1998). The District Court, serving as an appellate court, then reviews the Bankruptcy Court's findings of fact for clear error, and the Bankruptcy Court's conclusions of law *de novo*. *Wesbanco Bank Barnesville v. Rafoth (In re Baker & Getty Fin. Servs., Inc.)*, 106 F.3d 1255, 1259 (6th Cir. 1997) (citing Fed. R. Bankr. P. 8013), *cert. denied*, 522 U.S. 816, (1997). "A factual finding will only be clearly erroneous when, although there is evidence to support it, 'the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *U.S. v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948); *United States v. Ayen*, 997 F.2d 1150, 1152 (6th Cir.1993) (citations omitted).

### IV. ANALYSIS

On appeal, Del Monte asserts three arguments: (1) the Bankruptcy Court erred in determining that Arctic's claims for unpaid Freight Charges were unaffected by the limitations period found in 49 U.S.C. § 14705(a); (2) the Bankruptcy Court erred in holding that Del

4

Monte's damage claims were barred by 49 U.S.C. § 14706(e)(1); and (3) the Bankruptcy Court exceeded its jurisdiction in its Judgment Entry because, as expressed in the parties' Stipulation, the purpose of the cross motions for summary judgement was to resolve only the question of whether each party's claims were time-barred by the application of a federal statute of limitations.  This Court will address each argument.

### A. Arctic's Claim for Unpaid Freight Charges

In its complaint, Arctic seeks to recover unpaid Freight Charges from Del Monte for carrier services provided from October 2000 through February 2001.  Del Monte sought summary judgment from the Bankruptcy Court that Arctic's claims were time-bared by the eighteen-month statute of limitations in the Interstate Commerce Act, 49 U.S.C. § 14705(a).  The Bankruptcy Court denied the Motion and Del Monte now argues that this was in error.  This Court agrees.

The Interstate Commerce Act ("ICA"), as originally enacted, was a wide-ranging act that heavily regulated the transportation of goods and people between the states.  *See Verizon Communications, Inc. v. F.C.C.*, 535 U.S. 467, 478 n.3 (2002).  The era of intensive federal regulation of interstate transport largely came to an end, however, in 1995, when Congress passed the Interstate Commerce Commission Termination Act ("ICCTA"), 49 U.S.C. ch. 137.[1] *See Munitions Carriers Conference, Inc. v. United States*, 147 F.3d 1027 (D.C. Cir. 1998).  The ICCTA deregulated most sectors of road transport, and relieved road carriers from having to file tariffs describing their rates in detail.  *Id.*

---

[1] Rate regulation still applies to two specialized categories of trucking operations carrying household goods and certain noncontiguous domestic trade; neither of the categories are at issue in this case.

When it passed the ICCTA, however, Congress retained the ICA's statute of limitations applicable to claims brought by carriers against shippers. *See* 49 U.S.C. § 14705(a). The statute, which lies at the center of Del Monte's Motion for Summary Judgment provides: "A carrier providing transportation or service subject to jurisdiction under chapter 135 must begin a civil action to recover charges for transportation or service provided by the carrier within 18 months after the claim accrues." The claim accrues upon delivery or tender of delivery by the carrier. 49 U.S.C. § 14705(g). Chapter 135 provides that jurisdiction is exercised over transportation by a motor carrier, and the procurement of that transportation, to the extent that passengers and/or property are transported by motor carrier "between a place in a State and a place in another State." *See* 49 U.S.C. § 13501.

Because the goods at issue were delivered interstate between October 2000 and February 2001, and Arctic's state-court action against Del Monte was filed in February 2003, if the eighteen-month statute of limitations contained in 49 U.S.C. § 14705 applies, Arctic's claims for unpaid Freight Charges are time-barred. Otherwise, the statute of limitations associated with Arctic's state causes of action apply, and Arctic's claims will not be time-barred. *See* O.R.C. § 2305.07 (six-year statute of limitations for unjust enrichment); O.R.C. § 2305.09 (four-year statute of limitations for conversion); O.R.C. § 2305.06 (fifteen-year statute of limitations for enforcement of a written contract). This Court finds that the Bankruptcy Court erred when it concluded that the eighteen-month statue of limitations clearly set forth in 49 U.S.C. § 14705 did not apply to Arctic's claims.

The Bankruptcy Court held that because Arctic's state-based claims do not represent federal claims under the ICA, the state causes of action are not preempted by federal law and,

therefore, the eighteen-month federal statute of limitations does not apply.  *Bankruptcy Opinion* at 5.  The Court explained that had Arctic's claims been brought under federal law, they could be subject to federal preemption and the eighteen-month statute of limitations, but because Arctic asserted state causes of actions, the state statutes of limitations apply.  *Id.* at 6.  The Court noted that the former regulatory scheme of the ICA, which required filing a rate tariff, no longer existed and that the ICA, therefore, is no longer deemed to preempt state law in that area despite the stated eighteen-month limitations.  *Id.* at 6, 8.  The Bankruptcy Court found that, because Arctic's state-law claims were not preempted by the federal ICA, "neither should they be subject to [the ICA's] statute of limitations contained in 49 U.S.C. § 14705(a)."  *Id.* at 8.

       The Bankruptcy Court largely relied upon *Transit Homes of Am. v. Homes of Legend*, 173 F. Supp. 2d 1185 (N.D. Ala. 2001) in its analysis.  *Transit Homes* involved a carrier who sought federal jurisdiction over its claims against a shipper for unpaid freight charges.  The carrier's claim failed to exceed the "amount in controversy" requirement of the federal diversity statute, 28 U.S.C. § 1332, so it sought jurisdiction on the basis of 28 U.S.C. § 1337, which provides original federal jurisdiction for actions arising under any act of Congress that seeks to regulate commerce.  The carrier noted that, under *Thurston Motor Lines, Inc. v. Jordan K. Rand, Ltd.*, 460 U.S. 533 (1983), the Supreme Court had held that a carrier had a "duty" to collect all the money owing to a shipper because failure to do so could constitute impermissible price competition under the old rate system.  Therefore, the carrier argued, the collection of its shipping charges was a matter of federal law that entitled it to federal jurisdiction under § 1337.  The *Transit Homes* court, however, pointed out that the "duty" to collect all of a tariffed rate for shipping charges no longer attached because the motor freight deregulation of the 1995 ICCTA

abolished the need for filing and strictly observing rate tariffs. Therefore, the *Transit Homes* court refused to find jurisdiction for the carrier's claims. The Bankruptcy Court also cited *Cent. Transp. Int'l v. Sterling Seating, Inc.*, 356 F. Supp. 2d 786 (E.D. Mich. 2005), which remanded a similar case for unpaid freight charges to a state court for lack of subject matter jurisdiction.

The Bankruptcy Court analogized the instant case to *Transit Homes* and *Central Transport*, and found that because the ICA does not apply to Arctic's claims (because Arctic is no longer required to file a tariff), the statute of limitations set forth in the ICA do not apply. *Bankruptcy Opinion* at 8. This comparison and the Bankruptcy's ultimate finding was in error.

*Transit Homes* and *Central Transport* are not relevant to the facts of this case. Both of those cases involved carriers who sought to recover unpaid freight charges from their customers; in both cases, the carrier was unsuccessful in asserting federal jurisdiction under 28 U.S.C. § 1337, which provides jurisdiction over cases arising under federal interstate commerce regulations. Neither court, however, considered a defense by the shipper involving the eighteen-month statute of limitations in the ICA because neither court found that subject-matter jurisdiction existed such that it could appropriately hear claims and defenses. Thus, as to the application of the statute of limitations at 49 U.S.C. § 14705(a), both cases are inapposite.

This Court is persuaded by the logic in the recent case of *CGH Transp. Inc. v. Quebecor World Logistics, Inc.*, 2006 U.S. Dist. LEXIS 22657 (E.D. Ky. Apr. 24, 2006). In *CGH Transport*, the Eastern District of Kentucky was faced with precisely the same facts present in the instant case: the carrier claimed that the shipper had not paid its bills for freight charges, and the shipper sought to defend itself under the eighteen-month statute of limitations in 49 U.S.C. § 14705(a). The carrier argued that under *Central Transport* and *Transit Homes* its state law

claims were not preempted by federal law, and therefore, the eighteen-month statute of limitations did not apply. *Id.* at *4. The court found that while the carrier could bring state-based causes of actions, it had to do so within the federal statute of limitations:

> *Central Transport* and *Transit Homes* considered whether the Interstate Commerce Commission Termination Act ("ICCTA") gave rise to a cause of action for unpaid shipping charges for the purposes of establishing federal question jurisdiction. However, as neither case discussed the applicable statute of limitations, they are distinguishable from the instant case. *That [the carrier's state law] claims are not preempted by federal law does not preclude the defendants from relying on federal law to provide an affirmative defense.* [The carrier here] states that its claims are based on breach of contract; unjust enrichment/quantum meruit; conversion; a constructive trust theory; and fraud. *Even so styled, as these causes of action attempt to recover charges for interstate transportation and services, they are subject to the eighteen-month statute of limitations.* Artful pleading will not cloak a plaintiff's claim from the otherwise applicable law.

*Id.* at *5 (internal citations omitted) (emphasis added). Similarly, in the case at bar, just because Arctic can bring its state-law claims, because the parties agree that they are not preempted by federal law, it does not follow that a federal-law statute of limitations defense is unavailable to Del Monte.

Arctic argues that its state-law claims survive despite the ICA statute of limitations because the savings clause of the ICA states that, "[e]xcept as otherwise provided . . . the remedies provided under this part are in addition to remedies existing under another law or common law." 49 U.S.C. § 13103. The U.S. Supreme Court has explained, however, that the provision states that appropriate common law and statute remedies can be enforced when consistent with the scheme and purpose of the act. *Pennsylvania R. Co. v. Sonman Shaft Coal Co.*, 242 U.S. 120, 123–24 (1916).

Del Monte, however, has stated that it "has never claimed that pre-emption applies at all to this case." Del Monte does not contend that the statute of limitations applies because Arctic's

-9-

claims are preempted by federal law; rather, Del Monte argues that, based on the clear language of the federal statute, the statute of limitations exists independently of Arctic's claims. This Court agrees.[2]

Determination of the meaning of a statute begins with the plain language of the statute itself. *U.S. v. Ron Pair Enter., Inc.*, 489 U.S. 235, 241 (1989). In this case, this is also where the inquiry should end, "for where, as here, the statute's language is plain, 'the sole function of the courts is to enforce it according to its terms.'" *Id.* (citing *Caminetti v. United States*, 242 U.S. 470, 485 (1917)). The language before this Court expresses Congress' intent that the eighteen-month statute of limitations shall apply to all carriers who bring civil actions to recover charges for transportation of interstate goods.

---

[2] This Court observes, however, that, while the state causes of action themselves may not be preempted by federal law, the state statute of limitations are in direct conflict with 49 U.S.C. § 14705(a), and would therefore be preempted by such time limitation.

As the Bankruptcy Court explained, there are three circumstances when a federal law is deemed to have preempted a state law: 1) when there is "clear intent" to do so on the part of Congress; 2) when the federal law so occupies the field as to leave no room for state law; and 3) when there is a direct conflict between the state and federal laws in question. *Bankruptcy Opinion* at 9-10 (citing *Gustafson v. City of Lake Angelus*, 76 F.3d 778, 782-83 (6th Cir. 1996)). In the third circumstance, the Court noted that the Sixth Circuit test is to determine when the state law "stands as an obstacle to the full purposes and objectives of Congress." *Gustafson*, 76 F.3d at 783.

In this case, the Bankruptcy Court, nor any party, has explained why a six-year state law statute of limitations does not directly conflict with an eighteen-month statute of limitations under federal law. The purpose of the Interstate Commerce Act was to provide a uniform system of regulations for the transportation of goods and people in interstate commerce for the nation, and to do away with inconsistent state policies. *See S. Pac. Transp. Co. v. Commercial Metals Co.* 456 U.S. 336, 344 (1982). Permitting Ohio's state statute of limitations to trump the federal statute of limitations at 49 U.S.C. § 14705(a) would certainly "stand as an obstacle" to Congressional intent. Therefore, in this case, to the extent that Ohio law provides otherwise, Ohio law is preempted by 49 U.S.C. § 14705(a).

Arctic is a motor carrier and all deliveries at issue were interstate.  Therefore, the plain meaning of the statute states that Arctic must bring its claims to recover Freight Charges within eighteen months of the claims' accrual (i.e., within eighteen months of delivery or tender of delivery).  If Congress had intended to eliminate the statute of limitations when it deregulated the industry in 1995, it could have done so.  When Congress amends one portion of a statute, leaving another portion unchanged, it can be inferred that the decision not to alter the latter portion was just as intentional as the decision to alter the former.  *Dep't of Hous. & Urban Dev. v. Rucker*, 535 U.S. 125 (2002).  As twelve years have elapsed since deregulation, Congress has had ample time to amend the law and remove the statute of limitations.  Because Congress has not done so, and it is not within the judiciary's powers to do so, this Court finds hereby finds that decision of the Bankruptcy Court denying Del Monte's motion for summary judgment with respect to statute of limitations applicable to Arctic's claims is **REVERSED and REMANDED** to the Bankruptcy Court for further proceedings consistent with this opinion.

### B. Del Monte's Counterclaim for Damage During Shipping

In its Counterclaim, Del Monte seeks to recover damages incurred when Arctic allegedly delivered Del Monte's produce late or in bad condition.  Arctic sought summary judgment from the Bankruptcy Court that Del Monte's counterclaims were time-bared under the Carmack Amendment.  The Bankruptcy Court granted the Motion and Del Monte now argues that this was in error.  This Court agrees.

The Carmack Amendment to the Interstate Commerce Act, presently codified at 49 U.S.C. § 14706, was passed in 1906 as part of the Hepburn Act, ch. 5391, 34 Stat. 584, and governs the liability of carriers for lost or damaged goods.  Neither party to this action, nor the

Bankruptcy Court, dispute that the Carmack Amendment supplies the sole mechanism under which Del Monte may recover damages against Arctic Express, because the Carmack Amendment preempts all state law to the contrary. *See Adams Express Co. v. Croninger*, 226 U.S. 491 (1913).  The *Adams Express* Court ruled that all state and common law causes of action relating to services under the Carmack Amendment were preempted by the liability provisions within the Carmack Amendment. *Id.* at 505-06.  The Court held that "almost every detail of the subject is covered so completely that there can be no rational doubt that Congress intended to take possession of the subject [damages in interstate transportation], and supersede all state regulation with reference to it." *Id.; see also Atchison, Topeka & Santa Fe Ry. v. Harold*, 241 U.S. 371, 378 (1916) ("The Carmack Amendment . . . was an assertion of the power of Congress over the subject of interstate shipments, the duty to issue bills of lading and the responsibilities thereunder, which in the nature of things excluded state action.").  The Sixth Circuit stated these principles in *W.D. Lawson & Co. v. Penn Cent. Co.*, 456 F.2d 419, 421 (6th Cir. 1972).  Del Monte's counterclaim is against an interstate carrier for damaged goods; therefore, the Carmack Amendment indisputably governs this case.

The Bankruptcy Court, however, erred in its construction of the Carmack Amendment. The Amendment provides certain minimum time limits for the presentation of damage claims to a carrier, and carriers may not limit the time a shipper has to make such claims to less than the statutory minimum. Specifically, the time limitation provision of 49 U.S.C. § 14706 (e) (1), the Carmack Amendment, states in part:

> A carrier may not provide by rule, contract, or otherwise, a period of less than 9 months for filing a claim against it under this section and a period of less than 2 years for bringing a civil action against it under this section.  The period for bringing a civil action is computed from the date the carrier gives a person written notice that the carrier has disallowed any part of the claim specified in the notice.

49 U.S.C. § 14706 (e) (1).  In other words, under this section, neither a carrier nor a shipper may contractually agree to limit the time for making an informal claim against the carrier or filing a civil action against the shipper to less than the time periods under the Amendment.

The Bankruptcy Court erred when it held that the two-year period was not binding on a motor carrier.  It cited *Yamazen U.S.A., Inc. v. Chicago & Northwestern Transp. Co.*, 790 F.2d 621 (7th Cir. 1986) for the proposition that the two-year filing period was waiveable by both parties to a freight contract.  Its citation was critically flawed, however.  The Bankruptcy Court incorrectly cited *Yamazen* as reading: "[S]o long as shippers have the option of a two-year period, nothing prevents carriers and shippers from bargaining for a different filing period." *Bankruptcy Opinion* at 11.  However, *Yamazen* actually reads: "[S]o long as shippers have the option of a two-year period, nothing *in the Staggers Act* prevents carriers and shippers from bargaining for a different filing period."  *Yamazen*, 790 F.2d at 623 (emphasis added).  The Staggers Act, as *Yamazen* noted, gave the Interstate Commerce Commission the authority to relieve rail carriers from certain rules; it was passed in order to improve the competitive position of the railway industry after Congress had found that excessive federal regulation was harming the industry.  *Id.* at 622.  It did not loosen regulations for motor carriers; after its passage, motor carriers were still subject to the Carmack Amendment.  *See, e.g., Am. Trucking Ass'n. v. Interstate Commerce Comm'n*, 656 F.2d 1115 (5th Cir. 1981).

The Bankruptcy Court, erroneously applying *Yamazen* to this motor freight case, held that "if it is found that there was a contractually bargained-for period within which to bring suit, it provides a valid bar to suit even if the time limitation was less than two years." Bankrputcy Opinion at 11. The Bankruptcy Court cite the Fourth Circuit in *Shao v. Link Cargo (Taiwan), Ltd.* at length, which correctly applied the Carmack Amendment. *Bankruptcy Opinion* at 10–11. This Court cites the same part of the same case here.

> The district court correctly noted that [§ 14706(e)(1)] is not a statute of limitations, but a statutory determination of what is a reasonable period of time for a carrier to impose for filing a claim." *See Louisiana & W. R.R. v. Gardiner*, 273 U.S. 280, 284, 71 L. Ed. 644, 47 S. Ct. 386 (1927) (holding that an earlier version of [the Carmack Amendment] was not intended to operate as a statute of limitation but rather was meant to "restrict[] the freedom of carriers to fix the period within which suit could be brought . . . ."); *Yamazen U.S.A., Inc. v. Chicago and Northwestern Transp. Co.*, 790 F.2d 621, 623 (7th Cir. 1986) ("Courts have similarly held that [the Carmack Amendment] does not operate as a rigid statute of limitations but rather sets forth a reasonable time limit for filing."). The Carmack Amendment thus contemplates that limitation periods are terms to be bargained over between shipper and carrier, so long as the minimum conditions of [current § 14706(e)(1)] are met. *See Swift Textiles, Inc.*, 799 F.2d at 704 n.4 ("The Carmack Amendment on its face contemplates that the choice of a statute of limitation is to lie with the shipper subject to the minimum time limit prescribed by the Act. . . . The Act clearly anticipates statutes of limitations and legislatively approves any limitation period exceeding two years.").

*Shao v. Link Cargo (Taiwan), Ltd.*, 986 F.2d 700, 707-708 (4th Cir. 1993). In summary, *Shao* pointed out that "[t]he only statutorily specified limitations relating to the time for filing a claim under [the Carmack Amendment] are restrictions imposed on the parties' authority to contract for time limitations, as set forth in [§ 14706(e)]." *Id.* at 707. As the Fourth Circuit's analysis makes clear, the purpose of the Carmack Amendment was to provide a minimum length of time for filing a claim, not a maximum one.

Based on its erroneous application of *Yamazen,* the Bankruptcy Court erring in holding that there was no statutory minimum limit contained in the Carmack Amendment. But it further erred when it appeared to hold that the Carmack Amendment's minimum time limitations for Del Monte's claims was what the parities actually agreed to, instead of some other *longer* period of time. The Bankruptcy Court noted that "Del Monte is seeking recovery for shipments that occurred over two years, up to almost two and one-half years, earlier . . . ." *Bankruptcy Opinion* at 11. It then held, "[b]ased upon these findings, . . . that the Claims of Del Monte are outside the statute of limitations of the Carmack Amendment and are hereby denied." *Bankruptcy Opinion* at 12.

Having demonstrated that the Amendment provides only a minimum time for a shipper such as Del Monte to bring a claim, and that no maximum time is provided in the statute, this Court is unable to reach the conclusion that the Carmack Amendment provides the parties' agreed "statute of limitations." Any limit on counterclaims by Del Monte against Arctic would have been contained in an applicable agreement between the parties. The Bankruptcy Court should have considered whether there was a valid agreement between the parties, but there is nothing in the Bankruptcy Opinion that reveals such consideration. Arctic now contends that the Bankruptcy Court did consider the 1995 "Transportation Agreement" between the parties, "which contained shorter periods," than the Carmack Amendment and thereafter the Bankruptcy Court merely expanded the time limits to meet the Carmack statutory minimums. Arctic also concedes, however, that Del Monte disputed the Transportation Agreement's validity on the basis that it was unsigned by Del Monte. That led Arctic to move, on February 22, 2005, for leave to supplement the record with additional documentation indicating the validity of the

Agreement. Arctic's motion was opposed by Del Monte, and the opposition was replied to by Arctic, but the motion was never ruled upon by the Bankruptcy Court. Therefore, any additional documentation submitted by Arctic was not part of the record properly before the Bankruptcy Court. At the very least, the disputed circumstances surrounding the enforceability and validity of the Transportation Agreement presented a genuine issue of material fact which should have prevented the Bankruptcy Court from adjudicating Del Monte's counterclaim on summary judgment.

In *Shao*, the Fourth Circuit noted that whether there was a time limit in the agreement between the parties was an issue of fact necessary to determine whether the shipper's claim was time-barred. *Shao*, 986 F.2d at 708. The Bankruptcy Court noted that in *Shao*, the Fourth Circuit remanded the case to the District of Maryland for proper consideration of the agreement between the parties because the information needed was not contained in the record. *Shao*, 986 F.2d at 708. This Court will likewise remand this case to the Bankruptcy Court for such determination. The Bankruptcy Court is hereby ordered to determine whether there was any valid agreement between the parties, whether any time limitation on claims against Arctic was provided, and whether Del Monte filed its claims against Arctic during such time period.

For the foregoing reasons, the decision of the Bankruptcy Court granting Arctic's motion for summary judgment with respect to Del Monte's Carmack Amendment counterclaim is **REVERSED and REMANDED** to the Bankruptcy Court for further proceedings consistent with this opinion.

### C. Del Monte's Argument That the Bankruptcy Court Exceeded Its Jurisdiction

The parties in this case recognized that a legal ruling on the applicability of the statutes of limitations discussed above could have a conclusive effect on the pending disputes. Accordingly, they entered the Stipulation to have the Bankruptcy Court rule on such issues before engaging in further discovery. Pursuant to this stipulation, the parties each filed their cross-motions for summary judgment and awaited the Bankruptcy Court's opinion.

On appeal, Del Monte argues that the Bankruptcy Court exceeded the scope of its authority under the Stipulation, or at least, that the Bankruptcy Court went further than the parties expected at their oral argument, because it proceeded to render a judgment for Arctic without permitting Del Monte to assert any of its factual, as opposed to merely legal, defenses. Del Monte argued that it should have been permitted to assert, among others, the defense of recoupment. Arctic countered that this argument was not within Del Monte's notice of appeal, that Del Monte did not timely raise such defenses, and that this Court cannot now consider the argument that the Bankruptcy Court exceeded the scope of the stipulation between the parties.

Because this Court has reversed the Bankruptcy Court on both issues, it is unnecessary to resolve at this time whether Del Monte properly may assert such defenses or whether the Bankruptcy Court exceeded the scope of the stipulation.

## V. CONCLUSION

For the foregoing reasons, the Bankruptcy Courts' Opinion granting Arctic's Motion for Summary Judgment and denying Del Monte's Motion for Summary Judgment, and the

Bankruptcy Court's Judgment Entry in favor of Arctic are **REVERSED and REMANDED** consistent with this Court's opinion.

      **IT IS SO ORDERED.**

                                                   s/Algenon L. Marbley
                                            **ALGENON L. MARBLEY**
                                            **United States District Court Judge**

**DATED: March 30, 2007**